UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
DOMINICK CARABALLO, et al.,

                           Plaintiffs,          10 CV 1885 (SJ) (RML)

         -against-

THE CITY OF NEW YORK, et al.,
                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


## PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION
## FOR SUMMARY JUDGMENT


                                        REIBMAN & WEINER
                                        Attorneys for Plaintiffs
                                        26 Court Street, Suite 1005
                                        Brooklyn, New York 11242
                                        (718) 522-1743

*Of Counsel*:
Michael B. Lumer, Esq.

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

STATEMENT OF FACTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

POINT I      THE DEFENDANTS ARE NOT ENTITLED
             TO  SUMMARY JUDGMENT ON PLAINTIFFS'
             CLAIM FOR FALSE ARREST AND IMPRISONMENT . . . . . . . . . . . . . . . . .  5

             A.         Defendants' Cannot Establish Constructive Possession  . . . . . . . . 6

             B.         Dominic Caraballo . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

             C.         Maritza Mullero . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

             D.         The Medication  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

POINT II     THE INDIVIDUAL DEFENDANTS ARE NOT ENTITLED
             TO QUALIFIED IMMUNITY BECAUSE THEIR
             ACTIONS WERE NOT OBJECTIVELY REASONABLE  . . . . . . . . . . . . . . . 13

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

TABLE OF AUTHORITIES

Federal Cases                                                                    Page

*Bernard v. United States*,
25 F.3d 98 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Cammick v. City of New York*,
96 CV 4374 (RPP), 1998 U.S. Dist. LEXIS 18006 (S.D.N.Y. Nov. 17, 1998) . . . . . . . . . . . . . . 9

*Davis v. City of New York*,
04 CV 3299 (JFB) (RLM), 2007 U.S. Dist. LEXIS 10555 (E.D.N.Y. Feb 15, 2007) . . . . . . . . 6, 7

*Gerstein v. Pugh*,
420 U.S. 103 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Golino v. City of New Haven*,
950 F.2d 864 (2d Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Harlow v. Fitzgerald*,
457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982) . . . . . . . . . . . . . . . . . . . . . . . . 13

*Illinois v. Gates*,
462 U.S. 213 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Lennon v. Miller*,
66 F.3d 416 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Mandell v. Cty.of Suffolk*,
316 F.3d 368 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Martinez v. Simonetti*,
202 F.3d 625 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*McClellan v. Smith*,
439 F.3d 137 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*O'Neill v. Town of Babylon*,
986 F.2d 646 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*O'Neill v. Town of Babylon*,
986 F.2d 646 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

ii

*Papineau v. Parmley*,
465 F.3d 46 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Posr v. Court Officer Shield #207*,
180 F.3d 409 (2d Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Ricciuti v. N.Y.C. Transit Authority*,
124 F.3d 123 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Singer v. Fulton Cty. Sheriff*,
63 F.3d 110 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Takacs v. City of New York*,
09 CV 481 (LBS), 2011 U.S. Dist. LEXIS 7055 (S.D.N.Y.  Jan. 24, 2011) . . . . . . . . . . . . . . . . 6

*Torres v. Hanslmaier*,
94 CV 4082 (MGC), 1995 U.S. Dist. LEXIS 6193 (S.D.N.Y. May 8, 1995) . . . . . . . . . . . . 7, 9

*United States v. Brown*,
3 F.3d 673 (3d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Gordils*,
982 F.2d 64 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Heath*,
455 F.3d 52 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Holder*,
990 F.2d 1327 (D.C. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Jenkins*,
90 F.3d 814 (3d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Payton*,
159 F.3d 49 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Pennington*,
287 F.3d 739 (8th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Rios*,
856 F.2d 493 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

iii

*United States v. Rodriguez,*
392 F.3d 539 (2d Cir.  2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Samaria,*
239 F.3d 228 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Weyant v. Okst,*
101 F.3d 845 (2d Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Weyant v. Okst,*
101 F.3d 845 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

TYREE HARGROVES, LAVAR HARGROVES,
BRANDON HARGROVES, and KENNETH WRIGHT,

                 Plaintiffs,               03 CV 1668 (JFB) (KAM)
                                      03 CV 3869 (JFB) (KAM)
           -against-                 03 CV 5323 (JFB) (KAM)

THE CITY OF NEW YORK, NEW YORK CITY
POLICE DEPARTMENT, BARRY CULPEPPER,
and JOSEPH LIOTTA,

                 Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## PRELIMINARY STATEMENT

      This case concerns the August 13, 2009, arrests of plaintiffs Dominic Caraballo and Maritza Mullero in their apartment, and the unlawful detention of the infant M.N., during the course of this seizure.  The search warrant which gave rise to the defendants' entry into plaintiffs' residence was obtained through false statements, and the plaintiffs were then arrested despite the absence of any competent evidence that they had dominion and control over the contraband allegedly found in their apartment.  The Kings County District Attorney ("KCDA") declined to prosecute the plaintiffs, finding insufficient evidence to file charges.

      The defendants are now moving to dismiss all of the plaintiffs' state and federal claims.  As set forth herein, plaintiffs are opposing that part of defendants' motion that seeks to dismiss the plaintiffs claims arising under state and federal law for false arrest and false imprisonment.

In short, the defendants have virtually no evidence to connect either plaintiff with the small amount of heroin or the bullets that were allegedly recovered somewhere in the apartment.  The defendants do not recall where these items were found or who found these items, and did not memorialize where these items were found or who found them.  Moreover, the medication defendants seized was a non-controlled substance.  Put simply, the defendants cannot explain why either plaintiff was arrested, other than both were in an apartment where contraband was found.

Notwithstanding the wealth of case law that requires an evidentiary showing that the persons arrested exercised dominion and control over the contraband, the defendants argue that plaintiffs' mere presence in the apartment is more than sufficient to establish arguable probable cause.  This argument is wrong; as defendant Martin conceded in his deposition, whether probable cause existed depended on location of the contraband and the plaintiffs, and whether that contraband was in plain view.

Without some specific, competent evidence that either plaintiff exercised control and dominion over the contraband, there was no basis for their arrest.  Moreover, defendants knew that they could not arrest either plaintiff without some evidence linking them to the recovered contraband.  That the defendants lacked probable cause for these arrests was confirmed shortly thereafter when the KCDA declined to prosecute for this very reason.

Accordingly, defendants' motion to dismiss the plaintiffs claims for false arrest and imprisonment, as well as for the illegal entry and search of the premises, should be denied.

2

## STATEMENT OF FACTS

The facts of this case are set out, incorporated by by reference herein, in plaintiffs' accompanying Responsive Statement pursuant to Local Rule 56.1, the declaration of Michael Lumer, and the documents annexed thereto, as well as those documents submitted by the defendants.

In short, defendant Damon Martin obtained a search warrant by falsely stating certain material facts, and thereby deceiving New York Supreme Court Justice Debra Silber into issuing the warrant. The defendants then executed the warrant on August 13, 2009, during which time they arrested Dominic Caraballo, Maritza Mullero and Miguel Navarro, after allegedly recovering a minuscule amount of heroin, seventeen bullets, and some medication. The Kings County District Attorney's Office declined to prosecute Mr. Caraballo and Ms. Mullero, and both were released after many hours in custody. This lawsuit followed.

On April 18, 2011, Magistrate Judge Robert L. Levy issued an order holding:

> Accordingly, the unopposed motion is granted. In addition, I find
> that, as explained above, defendants have failed to identify any
> witnesses to plaintiffs' alleged criminality other than Officer Fusco.
> Accordingly, defendants are precluded from using any witness,
> other than Officer Fusco, to demonstrate that plaintiff engaged in
> criminal conduct.

(See Exhibit 2 to the Declaration of Michael Lumer, dated March 26, 2012; see also the order docketed on April 18, 2011).

Fusco has acknowledged that he does not know who found any of the contraband, nor does he know where it was found. He also cannot say who slept in what room and personally did not enter the apartment until after NYPD's Emergency Services Unit had secured the

3

plaintiffs and the premises, and thus does not know with certainty where any of the indiviudals were found by ESU.  In short, Fusco can only say that he believes somebody recovered these items somewhere in the apartment, and that the plaintiffs were sleeping somewhere in the apartment.  Absent more, these facts are insufficient as a matter of law to justify the arrest of either plaintiff.

**ARGUMENT**

**POINT I**

**THE DEFENDANTS ARE NOT ENTITLED
TO  SUMMARY JUDGMENT ON PLAINTIFFS'
CLAIM FOR FALSE ARREST AND IMPRISONMENT**

The defendants' motion for dismissal of the plaintiffs' claim for false arrest and imprisonment rests on a profoundly misleading interpretation of both the law and the facts.  More precisely, the defendants suggest that this Court adopt a new bright-line, strict liability standard, under which probable cause exists to arrest any and all occupants of an apartment when contraband is found therein, regardless of where the contraband was found, the location of the individuals, and the absence of evidence connecting the persons in the apartment to the contraband.  Such an extreme reading of the law is unsupported by the defendants' selective citations, much less the larger body of case law.

As a general matter, it is well settled that the "existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest,' whether that action is brought under state law or under Section 1983." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996), citing *Broughton v. State*, 37 N.Y.2d 451, 458 (N.Y. 1975).  A determination of whether probable cause to arrest exists depends on the "totality of the circumstances."  *Bernard v. United States*, 25 F.3d 98, 102, (2d Cir. 1994), citing *Illinois v. Gates,* 462 U.S. 213, 230 (1982).  Probable cause is established "when the arresting officer has 'knowledge or reasonable trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'" *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995), citing *O'Neill v. Town of Babylon*, 986 F.2d 646, 650 (2d Cir. 1993).

5

Here, to establish probable cause for the plaintiffs' arrest, the defendants have to show that Caraballo and Mullero each constructively possessed the contraband found in the apartment. The doctrine of constructive possession requires some showing of a nexus between the contraband and the person to be arrested; that the putative criminal defendant was able to exercise control and dominion over the contraband. Here, there is no evidence of any such constructive possession by any of the plaintiffs. The defendants have no memory of who found what where, and thus cannot connect the contraband to the plaintiffs. More to the point, they could not make such a connection on the date of the arrest, hence the KCDA's decision to decline prosecution. Accordingly, defendants' motion should be denied.

A.        **Defendants' Cannot Establish Constructive Possession**

The doctrine of constructive possession is not new, nor is it in dispute. As the Hon. Leonard B. Sand recently held:

> The doctrine of constructive possession allows the police to find probable cause to arrest anyone in a dwelling when contraband is discovered in plain view and it reasonably appears that all members of the dwelling exercised dominion and control over the area in which the contraband is found.

*Takacs v. City of New York*, 09 CV 481 (LBS), 2011 U.S. Dist. LEXIS 7055 at *8 (S.D.N.Y. Jan. 24, 2011) (emphasis supplied), citing, *United States v. Heath*, 455 F.3d 52, 57 (2d Cir. 2006), *United States v. Pennington*, 287 F.3d 739, 747 (8th Cir. 2002), *United States v. Holder*, 990 F.2d 1327, 1329 (D.C. Cir. 1993).

Similarly, in *Davis v. City of New York*, 04 CV 3299 (JFB) (RLM), 2007 U.S. Dist. LEXIS 10555 *17 (E.D.N.Y. Feb 15, 2007), the Hon. Joseph F. Bianco correctly articulated the existing state law standard, holding,

> Under New York law, a person 'constructively possesses tangible
> property when he exercises dominion and control over the property
> with a sufficient level of control over the area in which the contraband
> is found.

*Id.*, citing *Torres v. Hanslmaier*, 94 CV 4082 (MGC), 1995 U.S. Dist. LEXIS 6193 at *6-7

(S.D.N.Y. May 8, 1995).

The Davis case is instructive. There, members of the NYPD executed a search

warrant in an apartment where various plaintiffs, including brothers James, Jesse and Roosevelt

Davis, lived. According to the police, marijuana was recovered in plain view in the bedroom James

and Jesse shared and bullets from a drawer in Roosevelt's bedroom. The plaintiffs, however, stated

that the only marijuana in the house was in Roosevelt's pocket, which the police seized during the

search. *Id.* at *6. The Court denied defendants' motion for summary judgment, finding that while

there was no dispute that marijuana was recovered in the apartment, a question of fact existed as to

whether it was in plain view in the bedroom, or on Roosevelt's person. *Id.* at *23.

More significantly, the Court also found that summary judgment was not appropriate

with respect to the arrest of James and Jesse for the bullets in Roosevelt's room. There, the Court

held, the mere fact that they were in the same apartment as the bullets did not, without some

evidence of their dominion and control over the bullets, establish constructive possession. *Id.* at 30-

31, citing *United States v. Jenkins*, 90 F.3d 814, 818 (3d Cir. 1996) ("Dominion and control are not

established, however, by mere presence on the property where it is located or mere association with

the person who does control the drug or property.") (citation and quotations omitted); *see also*

*United States v. Brown*, 3 F.3d 673, 681 (3d Cir. 1993) ("[W]hile the evidence may be sufficient to

show that [the defendant] was residing at the [co-defendant's] home and that she knew that drugs

7

were in the house, the evidence is not sufficient to support a finding that she exercised dominion and control over the drugs.").

The Second Circuit has confirmed the general rule that proximity and knowledge do not, without more, compel a finding of constructive possession. As the Court has held, "[t]o establish constructive possession, the government must demonstrate that [the defendant] had the power and intention to exercise dominion and control over the heroin." *United States v. Rodriguez*, 392 F.3d 539, 548 (2d Cir. 2004), citing, *United States v. Payton*, 159 F.3d 49, 56 (2d Cir. 1998). Furthermore, "mere presence at the location of contraband does not establish possession." *United States v. Rios*, 856 F.2d 493, 496 (2d Cir. 1988) (per curiam). And, in *United States v. Samaria*, 239 F.3d 228 (2d Cir. 2001), the Second Circuit held that the defendant who was a passenger in his own car while it contained was not in constructive possession of stolen goods because "there is no evidence that [the defendant] handled any of the boxes or directed where they were to be taken or what was to be done with them." *Id.* at 239. Thus, "mere proximity or presence is therefore insufficient to support a finding of constructive possession." *Rodriguez*, 392 F.3d at 548, citing *United States v. Gordils*, 982 F.2d 64, 71 (2d Cir. 1992).

Notwithstanding the well settled law on constructive possession and probable cause, defendants now suggest that this Court ought to create a new rule, one that would hold that probable cause exists to arrest any and all individuals found in an apartment where contraband is located, regardless of whether there is any evidence to suggest these individuals exercised dominion and control over that contraband. Such a rule would stand well-settled jurisprudence on its head.

8

The cases cited by defendants for this proposition are unavailing.  For instance, in *Torres v. Hanslmaier*, the district court addressed a habeas petition challenging the sufficiency of the evidence that he possessed the contraband found in his apartment.  The district court noted not only that there was ample evidence that petitioner resided in the apartment with his wife and child, but that the "petitioner admitted to [the arresting officer] that any drugs and drug paraphernalia found in the apartment belonged to him."  This statement, coupled with the evidence of his residency, established constructive possession.  94 CV 4082 (MGC), 1995 U.S. Dist. LEXIS 6193 at *6-7 (S.D.N.Y. May 2, 1995).  In no way does *Torres* stand for the proposition that a resident in an apartment is, as a matter of law, in constructive possession of all contraband in the apartment.

*Cammick v. City of New York* is not any more helpful to defendants.  In *Cammick*, police officers executed a search warrant at an apartment in which two sisters lived with one woman's young child.  The older of the two sisters informed the officers that they alone lived in that apartment.  Thus, when an operable machine gun was found in a closet, the Court found that the women were in constructive possession of that weapon.  96 CV 4374 (RPP), 1998 U.S. Dist. LEXIS 18006 at 3-4 (S.D.N.Y. Nov. 17, 1998).  Here too possession was determined based on the facts of the case.  Even if *Cammick* were read more broadly, i.e., as holding that the contraband can be automatically attributed to the residents of an apartment, it would be an anomaly and at odds with well settled law.  It would also make no sense, as constructive possession can only be evaluated on a case by case basis.

Here, the record demonstrates that a tiny, minuscule amount of narcotics was recovered in the bedroom in which Miguel Navarro was found, and that bullets were found elsewhere in the apartment.  Nothing in the record promulgated by the defendants links either

9

Mullero or Caraballo to these items, and thus defendants had no basis to arrest either plaintiff for their constructive possession.

**B.**         **Dominic Caraballo**

By all accounts Dominick Caraballo was sleeping on a couch in the living room when the NYPD entered.  There is simply no evidence that he had any knowledge that there was heroin hidden in Miguel Navarro's bedroom, or bullets anywhere else in the house.  The defendants offer absolutely no evidence that even if Dominick Caraballo knew or suspected that such contraband was present, he somehow exercised dominion and control over it.

To put the matter most simply, the defendants had absolutely no reason to arrest Dominick Caraballo, other than because he was in the same apartment where contraband was found. The following questions and answers from defendant Fusco's deposition are illuminating:

> Q:     What evidence was available to you on August 13, 2009 that would suggest to you that Dominick Caraballo had custody, control or possession of the heroin that you recovered?
>
> A:     I don't know.  I don't know where he was found.  I don't know where he resided in the residence, whether or not he was up at the time.  Where I saw initially when I entered was not -- I was unaware if that's what their location was when ESU came in.
>
> Q:     And is your answer going to be the same if I 10 ask you that question about Maritza Mullero and the heroin?
>
> A:     Yes.
>
> Q:     And again, for the pills, would your answer be the same?
>
> A:     Yes.
>
> Q:     And the bullets too, although we don't know where the bullets were found.
> A:     Yes.

(Exhibit 1, Fusco Tr. at 162-163).  Fusco offers no defensible reason for Caraballo's arrest.

Accordingly, defendants' motion should be denied.

C.         **Maritza Mullero**

   The defendants resort to verbal sleight of hand and sophistry in an effort to create the impression that Mullero could reasonably be arrested for Miguel Navarro's heroin.  Towards that end, the defendants cite Ms. Mullero's testimony that (i) she normally sleeps in the same bedroom as her husband Miguel Navarro, and (ii) she knows he has used heroin in the bedroom before, as probable cause for her arrest.  There are, however, several major flaws with this argument.

   First, by all accounts, when Fusco entered the apartment, he found Mullero in the same bedroom as the minor plaintiff, M.N.  Thus, the fact that she ordinarily could be found in the same room as Navarro is really beside the point, as this was not information known or available to the defendants.

   Second, the fact that Mullero's husband had previously used heroin in their bedroom was also not known to the defendants.  Certainly, her awareness of this fact was not known to the defendants, and they do not make any such claim.  Moreover, as the plaintiff explains, Navarro is a drug addict who has struggled with his addiction.  She is aware of this fact and has testified candidly about it.  However, as of the date of the plaintiffs' arrest, she was under the impression that he had stopped and had no idea that there were drugs in the house.  (Exhibit 3, Mullero Decl. at ¶¶ 13-14).

   Third, Ms. Mullero strongly denies that the narcotics were in plain view.  (Exhibit 3, Mullero Decl. at 9).  Thus, even if the defendants suspected that Mullero usually slept in the same room as Navarro, that fact alone would not provide probable cause to arrest her for the 0.001 ounces

of heroin found behind the dresser.  Navarro was the only person named on the search warrant application, he admitted to ownership of the narcotics, and he was the only person in the room where the narcotics were actually found.  Thus, while probable cause existed for Navarro's arrest, no reasonable officer could have believed that Mullero could also be arrested on a theory of constructive possession.  Accordingly, defendants' motion should be denied.

**D.**     **The Medication**

The defendants suggest that the discovery of Ms. Mullero's mother's medication justified the plaintiffs' arrest.  This is an absurd argument.  According to Fusco, he found several dozen pills in the kitchen, some of which were unmarked, and which were different sizes, shapes and colors.  Putting two and two together, Fusco concluded that this array of medication of a diverse appearance must all be ecstacy.  This odd conclusion makes no sense, both because the differences between the pills would logically suggest that the pills were actually different from each other, and because there was no particular reason to suspect that any of the pills were any particular medication.  Certainly, the defendants have not offered anything in the way of evidence, at least beyond Fusco's interesting speculation, that this medication was a controlled substance.  Viewed simply, the pills are no more evidence of narcotics possession than a bag full of oregano.  The presence of the medication is a red herring and should be ignored.

12

**POINT II**

**THE INDIVIDUAL DEFENDANTS ARE NOT ENTITLED
TO QUALIFIED IMMUNITY BECAUSE THEIR
<u>ACTIONS WERE NOT OBJECTIVELY REASONABLE</u>**

Neither of the individual defendants are entitled to qualified immunity no

reasonable police officer could find the arrest of plaintiffs objectively reasonable, particularly

here where Fusco has lied about the location of the heroin in an attempt to justify the plaintiff's

arrests.. The individual defendants' acts here take them outside of the doctrine which generally

will shield police officers "from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would

have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396

(1982); *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 385 (2d Cir. 2003) (A government actor may be

shielded from liability for civil damages if "his conduct did not violate plaintiff's clearly

established rights, or if it would have been objectively reasonable for the official to believe that

his conduct did not violate plaintiff's rights.").

As the Second Circuit observed in 1991, "[t]he right not to be arrested or

prosecuted without probable cause has, of course, long been a clearly established constitutional

right." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991).  Thus, an arresting

officer may be entitled to qualified immunity with respect to claims of false arrest and malicious

prosecution only,  "if it was 'objectively reasonable' for him to believe that his actions were

lawful at the time of the challenged act." *McClellan v. Smith*, 439 F.3d 137, 147 (2d Cir. 2005)

(quoting *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995)); *see also Martinez v. Simonetti*, 202

13

F.3d 625, 634 (2d Cir. 2000).  There is no question that the conduct here constitutes the type of

police misconduct that cannot be shielded by qualified immunity.

   The Second Circuit has articulated the following standard for determining motions

for qualified immunity where the test is objective reasonableness:

> [I]f any reasonable trier of fact could find that the defendants'
> actions were objectively unreasonable, then the defendants are not
> entitled to summary judgment. An officer's actions are objectively
> unreasonable when no officer of reasonable competence could
> have made the same choice in similar circumstances.

*Lennon v. Miller*, 66 F.3d at 420-421; *see also*, *Papineau v. Parmley*, 465 F.3d 46, 59-60 (2d Cir.

2006).

   The salient issue before this Court is whether it was objectively reasonable for the

individual defendants to believe that they could arrest Caraballo and Mullero without violating

their constitutional right not to be falsely arrested and imprisoned.  The record before the Court is

unequivocal: not only could a trier of fact conclude that the conduct was objectively

unreasonable, such a conclusion is the only one that can be reached on the record before this

Court.  Accordingly, the individual defendants' motion to dismiss based on qualified immunity

should be denied, and the affirmative defense should finally be stricken altogether.

   It is well settled that the elements of a federal constitutional claim for false arrest

under 42 U.S.C. § 1983 are substantially the same as a state law false arrest claim.  *Weyant v.*

*Okst*, 101 F.3d 845, 852 (2d Cir. 1996).  In sum, in order to place a person under arrest, the

arresting officer must be in possession of facts sufficient to warrant a prudent person to believe

that the suspect had committed or was committing an offense.  *Posr v. Court Officer Shield #207*,

180 F.3d 409, 417 (2d Cir.1999); *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 128 (2d Cir.

1997), citing *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975)); *O'Neill v. Town of Babylon*, 986 F.2d 646, 650 (2d Cir. 1993).

In this instance, there is no question that a small amount of narcotics were found hidden in a bedroom where the defendants found one person: Miguel Navarro, the target of the warrant. There is also an allegation by the police that they found ammunition in the apartment. However, Fusco has no idea where and nobody on the scene thought it important enough to note where it was found. More to the point, Fusco cannot identify any evidence that links Caraballo or Mullero to the contraband. Indeed, Navarro took responsibility for the contraband. Yet, the defendants insisted on following through with the plaintiffs' arrest. Under the circumstances, no reasonable officer could have believed this to be acceptable conduct.

The most significant point is that Fusco has lied about whether the narcotics were in plain view. The defendants cite to this "fact" by point to Fusco's testimony. However, it is contradicted by the KCDA's Decline to Prosecute memoranda, which has an indicia of reliability, as it was based on information received on or close to the day of the arrest, and is also contradicted by Mullero's declaration.

The fact that Fusco would lie about the location of the heroin underscores that the defendants knew perfectly well that they could not justify the plaintiffs' arrests under the existing facts. Fusco lied precisely because he knew that the arrests could not otherwise be excused. This sort of deliberate and casual violation of one's constitutional rights cannot be countenanced or excused, and it is certainly not the sort of action that is immune from suit under this doctrine.

15

Moreover, defendant Martin has already acknowledged at this deposition that he understood that the defendants could not arrest the plaintiffs unless the defendants had evidence that each plaintiff exercised dominion and control over the contraband.  (Pl. L.R. ¶ 57).  While defendants insist that they had such evidence at the time, they cannot testify to it now, nor was it ever memorialized in any fashion.  Put simply, it does not exist.

As there is ample evidence that the defendants arrested the plaintiffs solely because of their presence in the same apartment where contraband was recovered, notwithstanding years of case law establishing that such arrests were improper, neither defendant is entitled to qualified immunity and defendants' motion should be denied.

16

## CONCLUSION

For the reasons set forth herein, and in the accompanying Local Rule 56.1 Statement and exhibits, defendants' motion to dismiss plaintiffs federal §1983 and state law claims sounding in false arrest and imprisonment should be denied.

Dated: March 26, 2012
        Brooklyn, New York

                                    REIBMAN & WEINER
                                    Attorneys for Plaintiffs

                                    _____
                                    Michael Lumer, Esq.
                                    26 Court Street, Suite 1808
                                    Brooklyn, New York 11242
                                    (718) 522-1743

To:     David M. Pollack, ACC (By Mail)