UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------X
DOMINICK CARABALLO, et al.,

        Plaintiffs,        10 CV 1885 (SJ) (RML)

-against-

THE CITY OF NEW YORK, et al.,    **PLAINTIFFS' STATEMENT OF FACTS PURSUANT TO LOCAL RULE 56.1**

        Defendants.
------------------------------X

## Responsive Statement of Facts In Opposition to Defendants' Statement Pursuant to Local Rule 56.1(b)[1]

1. Admitted.

2. Plaintiffs object to this statement pursuant to Fed. R. Evid. 402 and 403 ("FRE") as it is misleading and irrelevant. Defendants' statement of fact erroneously suggests that defendants found plaintiff Mullero in the same bedroom as Miguel Navarro when they entered the apartment. However, it is undisputed that Maritza Mullero was not present in this bedroom when the defendants entered her apartment, but rather was in her teenage daughter's bedroom, which is where the defendants found her. (See Transcript of Deposition of Thomas Fusco ["Fusco Tr."] at 86, annexed to the March 26, 2012, Declaration of Michael Lumer [the "Lumer Decl."] as Exhibit 1).

   Plaintiffs further object to the term "master bedroom" which is unsupported by defendants' cited authority.

3. Admitted.

---

[1] The defendants' Local Rule 56.1 Statement filed with the Court on December 11, 2011, pursuant to the Court's Individual Rules, contained 27 paragraphs. The 56.1 Statement filed in conjunction with the instant motion contains 9 new paragraphs, for a total of 36 paragraphs. Moreover, in several instances the defendants have changed the attribution of information from one defendant to the other.
    Accordingly, plaintiffs' Responsive Statement of Facts will necessarily differ from that originally filed with the Court on January 12, 2012.

4. Denied. Preliminarily, plaintiffs object to any citation to testimony by defendant Martin as Magistrate Judge Levy issued an order on April 18, 2011, that "defendants are precluded from using any witness, other than Officer Fusco, to demonstrate that plaintiff engaged in criminal conduct." (The "preclusion order"). Thus, defendants cannot cite to any statements or testimony by Martin designed to show that any of the plaintiffs were engaged in illegal conduct. (Exhibit 2 to the Lumer Decl.).

   In addition, plaintiffs object to this statement of fact as impermissible double hearsay under FRE 801 and 802. The authority cited by defendants is testimony by defendant Damon Martin that he was told by defendant Fusco that an anonymous person told Fusco "that marijuana was being grown at 433 Lincoln."

   Defendant Fusco conceded that there had not been any complaints about drug activity in the apartment prior to the warrant application. (Exhibit 1, Fusco Tr. at 61). Instead, Fusco testified that he was present on plaintiffs' roof on or about August 10 or 11, 2009, on a routine patrol when he happened to observe marijuana plants on a fire escape behind 433 Lincoln Avenue. Fusco did not know which apartments faced out onto the fire escape. (Exhibit 1, Fusco Tr. at 53-56).

   Plaintiffs further object on FRE 402 and 403 grounds as the cited testimony does not say that marijuana was being grown on plaintiffs' premises. Rather, it says simply that marijuana was grown at the location, which is a multi-story, multi-unit apartment building. (Exhibit 1, Fusco Tr. at 52-53).

   Plaintiffs further object on FRE 402 and 403 grounds as Martin offers no time frame for this information.

5. Denied. As set forth in response to Statement of Fact 4 *supra*, Fusco testified that (a) he first viewed the marijuana plants on or about August 10 or 11, and (b) he did not know what apartments faced out onto the fire escape when he viewed marijuana plants. (Exhibit 1, Fusco Tr. at 53-56).

   Plaintiffs further object to the use of any testimony by defendant Martin as barred by the preclusion order.

6.  Denied. Defendants previously stated that it was Fusco that retrieved the leaf. (Defendants' Rule 56.1 Statement dated December 11, 2011 at ¶6). Moreover, defendants offer no evidence that the plant clipping was ever tested at all, much less positively. In that regard, Martin concedes, even if the leaf was retrieved and submitted for testing, the NYPD lab never provided a response. (Transcript of Deposition of Damon Martin ["Martin Tr."] at p. 175-176, annexed to the Lumer Decl. as Exhibit 3).

    In addition, plaintiffs object as the authority cited by defendants are documents created by and concerning defendant Martin. Such testimony is barred by the preclusion order.

7.  Denied. Plaintiffs object to the cited evidence under FRE 402, 403 and 801. The Warrant Plan Pre-Execution form appears to be a document drafted by Martin. Nowhere on the document are there any comments or statements about marijuana plants, nor is there any indication as to the source of any information about any aspect of the drawing or the comments on the form. Furthermore, even if Martin had made any such statements, they are barred by the preclusion order.

    In addition, the page of testimony cited by defendants stands for the proposition that at the time Fusco observed the alleged marijuana plants, he did not know how many apartments were on that floor of the apartment building and did not know how many apartments had access to the fire escape. (Exhibit 1, Fusco Tr. at 55-56).

8.  Admitted. However, plaintiffs object to the evidence cited on the basis that defendants have never produced the underlying transcript from the application for the warrant, notwithstanding repeated court orders. (Email between counsel, annexed to the Lumer Decl. as Exhibit 5).

9.  Admitted.

10. Admitted.

11. Plaintiffs object to this statement pursuant to Fed. R. Evid. 402 and 403 ("FRE") as it is misleading and irrelevant. Defendants' statement of fact erroneously suggests that defendants found plaintiff Mullero in the same bedroom as Miguel Navarro when they entered the apartment. However, it is undisputed that Maritza Mullero was not present in this bedroom when the defendants entered her apartment,

3

but rather was in her teenage daughter's bedroom, which is where the defendants found her. (Exhibit 1, Fusco Tr. at 86).

Fusco has further testified that when he encountered the two female plaintiffs, he was not sure of their relationship. (Exhibit 1, Fusco Tr. at 87).

Plaintiffs further object to the term "master bedroom" which is unsupported by defendants' cited authority.

12. Admits in part. Fusco's testimony stands simply for the undisputed proposition that ESU performed the entry, and that Fusco was not present when the plaintiffs were initially seized.

Plaintiff Caraballo's actual testimony in the pages cited by defendants is that the officers placed a gun against his face and then physically threw him to the floor. (Transcript of Examination of Dominic Caraballo ["Caraballo Tr."] at 31-33, annexed the Lumer Decl. as Exhibit 4).

13. Admitted.

14. Admitted.

15. Admitted.

16. Denied. Plaintiffs object to this statement pursuant to Fed. R. Evid. 402 and 403 ("FRE") as it is misleading and irrelevant.

Moreover, Fusco admits that he was unaware of any evidence linking either Maritza Mullero or Dominic Caraballo to the allegedly recovered narcotics, bullets and pills, and testified unequivocally that he did not know where either plaintiff was in the apartment or what they were doing when the NYPD entered the apartment on the morning of their arrest. (Exhibit 1, Fusco Tr. at 162-163).

17. Denied. Plaintiff sought treatment for the writs at Jamaica Hospital. (Exhibit 4, Caraballo Tr. at 64-65).

18. Denied. (Exhibit 4, Caraballo Tr. at 64-65).

19. Admitted.

4

20. Denied. Fusco, who is the only officer permitted to testify about the seizure of evidence from the plaintiffs under the preclusion order, concedes that he does know if he personally found or recovered any of the narcotics or contraband allegedly found in the premises. (Exhibit 1, Fusco Tr. at 90).

Furthermore, the three glassines of heroin were found behind the dresser in bedroom. (Decline to Prosecute memorandum prepared by Assistant District Attorney Ryan Rhodes ["DP Memo"], annexed to the moving declaration of David M. Pollack [the "Pollack Decl."], dated February 29, 2012, as Exhibit O).

Plaintiffs object to defendants' reliance on the property voucher, as it is silent as to where the narcotics were found within the apartment.

Plaintiffs further object to the term "master bedroom" which is unsupported by defendants' cited authority.

21. Denied. While Fusco has testified to the field test, defendants never produced and are not now submitting any field test reports to confirm that a field test was actually performed.

22. Admitted in part and denied in part. According to the NYPD Laboratory Report produced and cited by defendants, two of the glassines were tested and found to contain a total of 0.001 ounces of narcotics (43 milligrams). The third glassine was not tested. (NYPD Laboratory Report, dated August 19, 2009 ["Lab Report"], annexed to the Pollack Decl. as Exhibit M).

23. Plaintiff objects on FRE 402 and 403 grounds. In her testimony cited by defendants, Mullero states simply simply that Navarro had previously been treated for heroin addiction and had previously used heroin in the bedroom. Nothing in the testimony cited by defendants makes any reference to when this prior usage occurred, and thus is entirely irrelevant to whether plaintiff had any knowledge that any contraband was in the apartment on that date, or exercised custody, control or dominion over that contraband, and calls for improper speculation and surmise by the trier of fact.

Mullero was unaware that Navarro was currently using heroin or that he had narcotics in the bedroom as of the date of the arrest. (See

annexed Declaration of Maritza Mullero, ["Mullero Decl"] at ¶¶ 13-14).

24. Denied. Plaintiff objects on hearsay grounds. Fusco has testified that he does not know who found the ammunition or where it was found. (Exhibit 1, Fusco Tr. at 100). The testimony of defendant Martin is barred by the preclusion order.

25. Denied. The pills -- legal medication belonging to plaintiff Muller's mother -- were stored in a kitchen cabinet. (See Mullero, Decl at ¶ 8).

26. Admitted that Fusco believed the pills were ecstacy. Plaintiffs object on FRE 402 and 403 grounds as the testimony cited by defendants is not relevant to any of the legal claims at issue.

Plaintiffs also object because Fusco's stated grounds for this belief was simply that they were unmarked and different sizes and colors, which falls far short of a reasonable basis for the conclusion that these pills were ecstacy. (Exhibit 1, Fusco Tr. at 147-148).

27. Denied. Martin's testimony is barred by the preclusion order. Furthermore, although the defendants looked for them, no marijuana plants were found on the premises. (Exhibit 1, Fusco Tr. at 123).

28. Admitted.

29. Admitted.

30. Plaintiffs object on FRE 402 grounds. Defendants' statement is irrelevant to whether the infant plaintiff was actually left in a neighbor's custody.

31. Admitted.

32. Admitted.

33. Admitted.

34. Admitted.

## Additional Facts
## Pursuant to Local Rule 56.1(b)

35. The defendants entered plaintiffs' apartment on August 13, 2009, a little after 6:00 a.m. (Exhibit 1, Fusco Tr. at 85).

36. The target of the warrant was Miguel Navarro. (Search Warrant Application at ¶ 2, annexed to Pollack Decl. as Exhibit G).

37. Members of the NYPD's Emergency Services Unit ("ESU") were the first officers to enter the apartment. (Exhibit 1, Fusco Tr. 73, 75-78).

38. The defendants waited outside the apartment until ESU advised that ESU had located and secured all the individuals in the apartment. (Exhibit 1, Fusco Tr. 78-79).

39. The defendants entered a few minutes after the ESU officers had breached the apartment. (Exhibit 1, Fusco Tr. at 79).

40. When the defendants entered the apartment, the plaintiffs were already seized and in custody. (Exhibit 1, Fusco Tr. at 79-80).

41. When the defendants entered plaintiffs' apartment, they found plaintiff Maritza Mullero in a bedroom with her daughter, infant plaintiff M.N. (Exhibit 1, Fusco Tr. 80).

42. When the defendants entered plaintiffs' apartment, they found plaintiff Dominic Caraballo on the couch in the living room. (Exhibit 1, Fusco Tr. at 162-163).

43. When the defendants entered plaintiffs' apartment, they found Miguel Navarro in a second bedroom. (Exhibit 1, Fusco Tr. at 162).

44. Defendants concede that they have no idea where any of the plaintiffs actually were when ESU entered the apartment. (Exhibit 1, Fusco Tr. at 163).

45. The defendants claim that 17 bullets were recovered inside the apartment but cannot say where they were found or who found them. (Exhibit 1, Fusco Tr. at 100).

46. The defendants claim to have recovered 0.001 ounces of heroin and/or

cocaine from behind the dresser in the bedroom where Navarro was found. (Exhibit O to the Pollack Decl., DP Memo).

47. Miguel Navarro was the only person found in the bedroom where the narcotics were hidden. (Exhibit 1, Fusco Tr. at 162).

48. The pills that were seized were not a controlled substance. (Exhibit M to the Pollack Decl., Lab Report).

49. The pills that were seized were legal medication that belonged to plaintiff Mullero's mother. (Mullero Decl. ¶ 8).

50. Defendant Fusco believed that the pills were ecstacy because they were different colors and unmarked. (Exhibit 1, Fusco Tr. at 147).

51. Defendant Fusco's only basis for believing that the medication was a contolled substance was the absence of any markings on the medication, and because they were not in their original bottles. (Exhibit 1, Fusco Tr. at 150).

52. However, Fusco does not know how many different sizes he saw and does not remember how many different colors the various medications were. (Exhibit 1, Fusco Tr. at 148).

53. No photographs were taken of the medication and Fusco has no memory of showing the pills to any supervising officers on the scene. (Exhibit 1, Fusco Tr. at 149).

54. Defendant Fusco does not know why he thought the medication was ecstacy, as opposed to any other possible narcotic substance. (Exhibit 1, Fusco Tr. at 150).

55. Defendants Martin and Fusco both participated in the decision to make the arrest. (Exhibit 1, Fusco Tr. at 117-119; Exhibit 3, Martin Tr. at 130, 135).

56. Martin was Fusco's immediate supervisor. (Exhibit 3, Martin Tr. at 140).

57. Martin knew that whether the defendants had probable cause to arrest the plaintiffs depends on the location of the contraband and the knowledge that the plaintiffs had about the presence of the contraband.

(Exhibit 3, Martin Tr. at 123).

58. Martin would not have arrested plaintiffs solely because of the medication that was found until after determining that the medication was in fact an unlawful controlled substance. (Exhibit 3, Martin Tr. at 122)

59. Miguel Navarro told the defendants that the narcotics and bullets were his. (Transcript of Examination of Maritza Mullero ["Mullero Tr."] at at 34-36, annexed as Exhibit 5 to the Lumer Decl.; Exhibit O to the Pollack Decl., DP Memo).

60. The defendants admitted on the date of the arrest that there was no basis to arrest Caraballo. (Exhibit 4, Caraballo Tr. at 46).

61. Defendant Fusco cannot identify any evidence that was available to him that would suggest to him that either Dominic Caraballo Maritza Mullero had custody, control or possession of the heroin, pills or bullets defendants allegedly recovered. (Exhibit 1, Fusco Tr. at 162-163).

62. The Kings County District Attorney's Office declined to prosecute Dominic Caraballo because there was insufficient evidence that Caraballo exercised dominion or control over the contraband and thus there was insufficient evidence to prosecute. (Exhibit O to the Pollack Decl., DP Memo).

]

]

]

]

]

]

]

]

63. The Kings County District Attorney's Office declined to prosecute Maritza Mullero because there was insufficient evidence that Mullero exercised dominion or control over the contraband and thus there was insufficient evidence to prosecute. (Exhibit O to the Pollack Decl., DP Memo).

Dated: Brooklyn, New York
       March 26, 2012

>                                   REIBMAN & WEINER
>                                   Attorneys for Plaintiffs
>
>                                   *[signature]*
>
>                                   Michael Lumer, Esq.
>                                   26 Court Street, Suite 1808
>                                   Brooklyn, New York 11242
>                                   (718) 522-1743

To:   David M. Pollack, ACC (By Mail)